On Application por Rehearing.
The opinion of the court was delivered by
Nicholls, C. J.
The plaintiffs leased from defendant Henderson the property No. 100 Canal street, for a term of five years, from October 1, 1890.
The property was partially destroyed by fire on the 21st of September, 1893. This suit was instituted on October 3,1893, to annul the lease, plaintiffs having met with a refusal the day previous (October 2, 1893) to a demand for the return of the notes for the unexpired term of the lease. Judgment was rendered in the case on the 9th of January, 1894, in the District Oourt, annulling the lease as prayed for. Defendants, on the 23d of January, 1894, perfected a suspensive appeal from the judgment by giving the required bond, and this court, on the seventh day of May, 1894, reversed the judgment of the lower court.
Plaintiffs applied for a rehearing.
At the time of the judgment rendered by us, the suit of A. Meyer & Bro. vs. M. H. Rothschild, to which reference is made hereafter, was also before us, under an appeal taken by the plaintiffs therein from a judgment adverse to them. Upon the same day that our judgment was rendered in the present suit, we affirmed the judgment rendered in that case by the lower court and our judgment has become final. 46 An.
In the opinion heretofore rendered by us, in the case now before us, we held that “the partial destruction of the building leased by plaintiffs from defendants made it entirely unfit for the purposes for which it was leased. It was a wreck. It was not habitable; it was *1552 unfit for the storage of goods and merchandise. The necessary repairs to it required some months for their completion,” and we declared that “if these facts alone were presented, the plaintiffs would be entitled to a decree annulling the lease.” We see no reason to change our views so expressed.
We have carefully considered the grounds which defendants assign as those which legally stand in the way of the relief prayed for by the plaintiffs.
It appears that in the summer of 1892 one M. H. Rothschild negotiated with the attorney of the present plaintiffs for the unexpired term of their lease for the price of five thousand two hundred and fifty dollars per year. Security was demanded from Rothschild, who was either unable or unwilling to give it. On the 10th August, 1892, a verbal agreement was reached by which he consented to take the unexpired term by paying in advance, with a discount of eight per cent. After this agreement, he declined to take the premises, and A. Meyer & Bro., on the 28th of January, 1893, brought suit against him for the recognition and enforcement of their alleged rights under the same.
In the petition in that suit they alleged that they had leased the property to Rothschild, and had tendered him the premises and placed the use and occupancy of the same at his disposal, and that the premises were vacant and unoccupied, and that he refused to pay under his contract the rent therefor.
Rothschild denied that there was any valid contract of lease, and specially relied upon the fact that the lease from the Hendersons to Meyer & Bro. contained a clause prohibiting their leasing the property to others without the consent of the original lessors, and that this consent had never been given. The District Court on August 17, 1893, sustained the defence set up, and rendered judgment in favor of Rothschild against the plaintiffs. The plaintiffs appealed, perfecting their appeal by giving bond on September 6, 1893. The transcript of appeal was duly filed (November 9, 1893) in this court, argument on both sides heard, and our judgment of affirmance, to which we have alluded, was rendered on the 7th day of May, 1894.
In our opinion we declared that the consent of the Hendersons to the lease had never been obtained, and this our conclusion was to a great extent based upon the testimony of the agents of the Hender- *1553 •sons which had been taken upon the trial. Holding that “ this consent was essential to the perfection of a contract of lease between the parties who could not by any agreements between themselves supply the missing link,” and that this consent had not been given, we necessarily sustained the judgment appealed from.
While defendants offered in evidence in the lower court the record of the District Court in the case of A. Meyer & Bro. vs. Rothschild, it was not in support of any plea or averment in their answer, setting up the pleadings in that case, or the course pursued by the plaintiffs therein, as a special defence or bar to this suit, but evidently in aid of the position then taken by them, that at the time of the fire and before the same, A. Meyer & Bro. had gone to another building, and had no intention of occupying or remaining in the property leased by the Hendersons, and that therefore no injury was occasioned them by the temporary unfitness of the building for occupancy. The objection taken by the plaintiff to the admissibility generally of the record, and the remarks of the District Judge, in passing upon the objections and restricting the reception of the evidence, show this to have been the fact.
Defendants press upon us that the fact that A. Meyer & Bro. had made a lease to Rothschild is undisputed; that this is shown by the judicial allegations in their suit against him, and they urge upon us that they were prosecuting that suit at the time the cause for dissolution of the lease arose, and that they continued to prosecute the same during the whole period of the pendency of the present suit; that proof of these facts is entirely equivalent to a judicial admission made in the present case on the trial thereof. In their brief on rehearing, they say they were not aware when their answer was filed (as the Rothschild record had not yet been lodged in the Supreme Court) ; that plaintiffs still continued the prosecution of their suit against him, hence the absence of special plea of the sublease, but that the evidence was admissible under the general issue — that •defendant could urge under the general issue plaintiffs’ failure to establish a condition precedent to his right of recovery — that their retention of the right of occupancy was a condition precedent to their right to sue for a dissolution of the lease, and their sublease to Rothschild operated an abandonment of their right of occupancy. They contend that plaintiffs, by their continuous judicial action, •placed it beyond their power to surrender the leased premises *1554 to them; that the suit was a notice to them that they desired a continuance of the lease. That the lessors could not take possession of this property in the face of the judicial declarations of plaintiffs, and that these judicial declarations bring the case directly within the ruling in Penn vs. Kearney, 21 An. 21." They further declare that it is evident that no question of estoppel arises in the case.
An examination of the Rothschild record in the lower court shows that that case was tried, judgment rendered and appeal to the Supreme Court perfected before the fire which caused the partial destruction of the property leased. Nothing, therefore, in that record of itself could have any bearing upon plaintiffs’ right to maintain an action for the dissolution of the lease when the fire occurred, for we adhere to the views expressed in our original opinion that it was legally immaterial whether, at the time of the fire, Meyer & Bro. were actually in the building or not, or whether or not they had proposed to occupy it during the time it was unfit for use. If plaintiffs’ rights have by their action been impaired it must rest upon the proposition that, either when the fire occurred or since, they have placed themselves in a position such as would prevent. them from making a surrender of the property to the Hendersons. Plaintiffs point to the active prosecution by Meyer & Bro. of the appeal taken by them against Rothschild, even after the decision in the present case had been rendered in the lower court, as a continuing judicial admission, and insisting upon the fact that the Henderson property was still under lease to Rothschild, and therefore necessarily as still under lease to them, as Rothschild held under them.
There can be no doubt that Meyer & Bro. believed, when they insituted their suits against Rothschild, that they had made a legal lease of the property to him. Our opinion in that case shows that as between those parties there was an agreement of lease, but that it was inoperative by reason of the fact that the Hendersons had never given their consent to the same. The Hendersons were aware of that fact. The testimony of their own agent was to that effect, and this fact placed it out of the power of the Meyers to make a legal delivery of the premises to Rothschild. The Hendersons could have successfully objected. There never was a moment when such a delivery could be made to Rothschild, and it was precisely on this ground that he resisted and disclaimed liability. This fact has been judicially determined. It can not be gainsaid. It is a *1555 mistake, therefore, to argue that Meyer & Bro. were at any time barred from surrendering. Not only this, but it is obvious that they had no desire themselves to hold and beep possession of the premises. No portion of the future rent would go to them. The whole would go to the original lessors, if a lease to Rothschild could be maintained. The demand of the defendants for a return of the notes, made as early as the 2d of October, showed plainly that the Meyers claimed and desired no further possession, and a consent by the Hendersons on that day to their demand could have met with legal opposition nowhere, certainly not from Rothschild, who had constantly maintained and was then successfully maintaining that he was under no legal liability to the Meyers and necessarily, therefore, none by the Meyers to him. The Hendersons themselves could predicate nothing upon a lease to Rothschild, for they had not then nor have they ever given any consent to such a lease. Had the minds of the Hendersons met that of the Meyers relatively to a cancellation of the lease, the immediate effect would have been legally a forced abandonment by Meyer & Bro. of the appeal from the Rothschild judgment and an acquiescence therein. Certainly from that time forward, if not before, they would be estopped from holding Rothschild. Such an abandonment would not be adverse to Rothschild, but directly in his interests and in line with his pretentions. If Rothschild instead of being a defendant had been a plaintiff seeking to hold the Meyers to a lease alleged to have been made to him by them, prior to the fire, with the latter ñrm resisting the claim, the existence of such a suit based on such a claim might have furnished some fear on the part of the defendants as to their position ultimately in regard to the property, and some fear that they might be held by expressions of their agent in the course of the negotiations between the Meyer & Bro. and Rothschild to have expressly or impliedly agreed to the sublease, and that they might themselves finally be confronted by a successful claim to possession from Rothschild, but with matters standing as they did, we do not see what adverse, claims to a delivery of possession could possibly have arisen. As the Meyers had been cast in their action against Rothschild, and the Hendersons had appealed from the judgment against them, and the final result of lawsuits is always a matter of uncertainty to litigants, we see nothing in the prosecution by Meyers of their own appeal, which would impair their actual legal rights. *1556 Their appeal was evidently only prosecuted contingently, and as the result of the appeal in this case. It may not be amiss to say that the asserted lease from Meyer & Bro. to Rothschild antedated the fire, was for the whole property, and for the whole of the unexpired term, and therefore the partial destruction of the property, which would give rise to a dissolution of the lease as between Meyer & Bro. and the Hendersons, would also have given rise to a right of dissolution as between Meyer & Bro. and Rothschild, had there been a lease between those parties. The Meyers could not themselves have held Rothschild as a lessee beyond the date of the fire. Could they have successfully maintained their claim that there was a valid lease of the premises from themselves to Rothschild, they would have had a just claim to rent from him up to that date, and therefore they had a direct interest even after the fire in obtaining the reversal of a judgment which held that they had no claim at all against Rothschild.
For the reasons herein assigned it is hereby ordered, adjudged and decreed that the judgment rendered by us in this case be and the same is hereby set aside, and it is now ordered, adjudged and decreed that the judgment appealed from be and it is hereby affirmed.
Mr. Justice McEnery adheres to the original opinion.